**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ***IN RE SUBPOENA TO JACK SMITH***<br><br>BRITISH BROADCASTING CORP.,<br>Petitioner,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE – CIVIL DIVISION, FEDERAL PROGRAMS BRANCH,<br><br>Respondent. | Case No. 1:26-mc-00188 (JEB) |

**MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER**

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………………….……………..1

ARGUMENT……………………………………………………………………….……..2

I. Exceptional Circumstances Warrant Transfer……………………………….....................2

1. *A non-transfer would disrupt the Issuing Court's management of the underlying litigation and risk inconsistent discovery rulings.*……………………....................4

2. *Resolving the motion to compel would benefit from familiarity with the underlying dispute.*……………………...........................................................................8

3. *The factors in favor of transfer outweigh any burden on Mr. Smith*........................9

CONCLUSION……………………………………………………………………..……11

## INTRODUCTION

The issuing court in the Southern District of Florida ("Issuing Court") has been actively overseeing the dispute regarding the subpoena from the British Broadcasting Corporation ("BBC") to Jack Smith. Indeed, the magistrate judge has issued a protective order regarding Mr. Smith's subpoena. In issuing that protective order, the magistrate judge examined various factors, including the fact that the Government had not yet responded to Mr. Smith's letter regarding authorization to testify pursuant to the Department of Justice's *Touhy* regulations. The magistrate judge then ordered the Government to respond to Mr. Smith's letter by November 2, 2026, which the Government did. The BBC's motion to compel arises from the Government's court-ordered November 2 *Touhy* response. Given this posture, this Court should transfer that motion to the Issuing Court to allow that court to continue overseeing this subpoena dispute.[1]

Under Rule 45(f), this Court "may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). The motion to compel should be transferred due to exceptional circumstances—namely, non-transfer would disrupt the Issuing Court's management of discovery, would risk inconsistent discovery rulings, and resolving it implicates the merits of the underlying litigation. These factors outweigh any burden that transfer of this dispute might impose on Mr. Smith personally because the dispute concerns the Department of Justice's *Touhy* response, which the Department—not Mr. Smith—is litigating to defend.

Counsel for the United States conferred with counsel for Mr. Smith via email regarding the at-issue request to transfer. Mr. Smith's counsel informed counsel for the United States via Email

[1] The Government's request is limited to the BBC's motion to compel. At this juncture, the Government does not move to transfer the BBC's motion to authorize disclosure of certain grand jury information.

that Mr. Smith does not consent to transfer, but does not intend to file an opposition. Counsel for the United States also conferred with counsel for the BBC via email regarding the at-issue request to transfer. The BBC's counsel informed the undersigned counsel via email that the BBC opposes this request.

## ARGUMENT

### I. Exceptional Circumstances Warrant Transfer.

Rule 45(f) provides that a district court "may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). Although Mr. Smith is the nominal respondent on the subpoena, the subpoena seeks to depose Mr. Smith only in his capacity as a former Department of Justice employee. Indeed, the Department of Justice is the Respondent in this suit—rightly so. This subpoena dispute is a challenge to the Department's November 2 *Touhy* response ("*Touhy* response"). Thus, the real party in interest to the dispute is the Department of Justice. This conclusion is consistent with the D.C. Circuit's opinion in *Watts v. SEC*, 482 F.3d 501 (D.C. Cir. 2007). There, the subpoenaing party, "Watts[,] served third-party testimonial subpoenas under Federal Rule of Civil Procedure 45 on three Securities and Exchange Commission [SEC] employees." *Id.* at 411. "The SEC did not permit the three employees to testify, contending that their testimony would cover privileged matters and be unduly burdensome." *Id.* Watts then challenged the SEC's refusal to authorize the sought testimony. In reasoning that the challenge is properly analyzed as a Rule 45 motion to compel, the D.C. Circuit explained that "government agencies are 'persons' subject to Rule 45 subpoenas," *id.* at 508, and that in evaluating these challenges, district courts must "adequately protect both the litigant's right to evidence and the government's interest in not being used as a speakers' bureau for private litigants," *id.* (citation

omitted).

Although *Watts* did not arise in the context of a Rule 45(f) transfer motion, its reasoning supports the conclusion that the Government is the real party in interest where the subpoena dispute arises out of the Government's refusal to authorize an official-capacity deposition. Applying that reasoning here, the real party in interest to the dispute here is the Department of Justice, and thus, its consent to transfer this dispute should be afforded substantial weight. This approach is also consistent with the overarching goal of Rule 45(f), which, as explained in more detail below, seeks to address the burden of nonlocal *litigation* "by requiring local resolution of subpoena-related disputes." *In re Braden*, 344 F. Supp. 3d 83, 95 (D.D.C. 2018); *see* Part I.3, *infra*. Where, as here, the subpoena dispute is a challenge to the Department's *Touhy* response, any litigation "burden" is borne by the Department—not the former employee. And the Department "has consented to whatever inconvenience [it] may experience from having the Motion[] resolved in the Southern District of Florida, rather than here in the District of Columbia." *See In re Subpoena to Pasquale Anthony Cipollone*, 26-mc-00142, ECF No. 13 at 3 (D.D.C. Nov. 10, 2026).

But even putting aside the Department's consent to transfer, "exceptional circumstances" independently warrant transfer. In determining whether such exceptional circumstances exist, courts consider: "(1) whether failure to transfer will disrupt the underlying litigation; (2) whether the issuing court is better positioned to rule on the issues; and (3) whether transfer will impose an undue burden or cost on the nonparty that seeks to obtain local resolution of the issues." *Georgetown Univ. v. Carfora*, 2026 WL 2211247, at *2 (D.D.C. July 31, 2026).

For instance, "[t]ransfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P.

45(f) advisory committee's note (2013 amendments). Transfer may also be warranted where "the issuing court is in a better position to rule on the motion due to [its] familiarity with the full scope of the issues involved." *In re Braden*, 344 F. Supp. 3d at 90 (quoting *In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d 286, 288 (D.D.C. 2015)) (alteration in original). Courts in this district routinely transfer subpoena disputes on these grounds. *See, e.g., In re Braden*, 344 F. Supp. 3d at 90; *Lipman v. Antoon*, 284 F. Supp. 3d 8, 13 (D.D.C. 2018); *Fed. Home Loan Mortg. Co. v. Deloitte & Touche, LLP*, 309 F.R.D. 41, 43 (D.D.C. 2015); *In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig.*, 113 F. Supp. 3d at 288; *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014).

Similarly, here, transfer is warranted because (1) a non-transfer would disrupt the Issuing Court's management of the underlying litigation and risk inconsistent discovery rulings, (2) resolving the subpoena dispute would benefit from the Issuing Court's familiarity with the underlying claims, and (3) these considerations outweigh any burden that a transfer would impose on Mr. Smith personally.

1. *A non-transfer would disrupt the Issuing Court's management of the underlying litigation and risk inconsistent discovery rulings.*

"Courts have found exceptional circumstances warranting transfer . . . when transferring the matter is in the interests of judicial economy and avoiding inconsistent results." *Georgetown*, 2026 WL 2211247, at *2 (alteration in original) (quoting *Wultz*, 304 F.R.D. at 46). Those considerations are particularly pressing here. As this Court explained in transferring the dispute regarding the BBC's subpoena to Mr. Cipollone, "transfer would ensure that th[e] discovery dispute is resolved consistently with other matters in the case." *See In re Subpoena to Pasquale Anthony Cipollone*, 26-mc-00142, ECF No. 13 at 3 (D.D.C. Nov. 10, 2026). "Discovery is nearly complete in the Southern District of Florida, and the district court there has already issued

numerous discovery rulings . . . includ[ing] a recent Order quashing a subpoena issued to [Cassidy Huchinson]." *Id.* "Given the issuing court's familiarity with the underlying litigation and existing discovery disputes, a similar transfer also seems appropriate here." *Id*.

Those same considerations apply with even greater force here because the Issuing Court has already weighed in on the subpoena to Mr. Smith. *See Trump v. British Broadcasting Corporation*, No. 1:25-cv-25894 (S.D. Fla.) ("*Trump v. BBC*"), ECF Nos. 196, 204. Specifically, the Issuing Court held a discovery hearing regarding the subpoena to Mr. Smith, *see id*., Oct. 22, 2026 Paperless Minute Entry, ECF No. 196; granted, without prejudice, Plaintiff's *Ore Tenus* Motion for Protective Order Regarding Subpoena to Non-Party Jack Smith, *see id*., Oct. 27, 2026 Paperless Order, ECF No. 204; and ordered the Government to respond to Mr. Smith's letter regarding the BBC's subpoena by November 2, *see id.* Indeed, the at-issue motion to compel arises out of the Government's court-ordered November 2 *Touhy* response.

Additionally, the Issuing Court has already considered many of the factors that will bear on the motion-to-compel analysis. Specifically, in its October 27, 2026 Paperless Order, Magistrate Judge Lett considered, among other things, the application of "Rule 6(e) of the Federal Rules of Criminal Procedure[,] [which] prohibits the disclosure of grand jury proceedings." *Id*.; *see also id.* ("Mr. Smith has testified before Congress that he has shared everything possible without running afoul of Rule 6, and therefore, Plaintiff argues it is unlikely that Mr. Smith will offer any additional information that is not already publicly available."). Moreover, given the fact that "Mr. Smith only possesses relevant knowledge based on investigations conducted in his official capacity having been appointed special counsel under the Department of Justice," Magistrate Judge Lett acknowledged the application of the Department of Justice's *Touhy* regulations. *Id.* Because the Department of Justice had not yet responded to Mr. Smith's *Touhy* inquiry or authorized his

testimony, she ordered the Department to "respond to Mr. Smith's correspondence regarding his request to provide testimony in compliance with the subpoena issued by Defendant in this matter" by November 2, 2026. *Id.* Additionally, she considered the relevance of the sought testimony. Specifically, she acknowledged that her prior discovery order made clear that "the Complaint does not extend so far as to entitle Defendant to relitigate and discover every aspect of the events of January 6, 2021 and seek discovery from any and all individuals who may have knowledge regarding the day's events." *Id.* (quoting *Trump v. BBC*, Omnibus Order Following Disc. Hr'g on Joint Mot. for Disc. Hr'g, ECF No. 120 ("*Trump v. BBC*, Omnibus Order") at 11). And yet, "Mr. Smith's role as Special Counsel was just that - litigating and discovering the events of January 6, 2021." *Id.* She also stated that "Mr. Smith has information surrounding the 'contours of [President Trump's] message and impression.'" *Id.* (quoting *Trump v. BBC*, Omnibus Order at 9) (alteration in original). In doing so, she explained that "[b]oth parties' arguments are well taken concerning the need to circumscribe discovery so that ancillary matters don't swallow the primary issues while allowing the parties the latitude permitted by the Federal Rules to develop their respective cases." *Id.* Ultimately, Magistrate Judge Lett concluded that "procedural thresholds prevent the Court from allowing such testimony at this juncture." *Id.*

Moreover, Magistrate Judge Lett clearly contemplated that any further dispute regarding the subpoena to Mr. Smith following the Government's November 2 *Touhy* response would be raised before the Issuing Court. Specifically, she instructed the parties and the Government that following the Government's *Touhy* response, "the parties -- or the Government . . . can apprise the Court and we can go from there. Any further appropriate motions or proceedings can be raised." *See Trump v. BBC*, Oct. 22, 2026 Hr'g Tr. at 108:8-13, ECF No. 197.

As the above makes clear, the Issuing Court has plainly "taken an interest and active role

in resolving" this subpoena dispute. *Wultz*, 304 F.R.D. at 47. Given this posture, judicial efficiency weighs heavily in favor of transfer, which would allow the Issuing Court to continue overseeing the dispute over Mr. Smith's testimony. *Cf. Jiang v. NVIDIA Corp*., 2026 WL 962496, *2 n.3 (D.D.C. Apr. 9, 2026) (denying the transfer request because, among other things, the court had "already invested substantial time on the matter").

Moreover, as this Court has already acknowledged, the Issuing Court has issued numerous relevant discovery rulings and is actively managing other discovery disputes. For instance, Judge Kuntz has already quashed another nonparty subpoena that also sought testimony regarding the events of January 6. *See Trump v. BBC*, Order Consolidating Cases and Quashing Subpoena, ECF No. 175 ("*In re Hutchinson*, Order Quashing Subpoena"). And the Issuing Court will soon resolve a similar dispute regarding the subpoena issued to Mr. Cipollone that this Court transferred. *See In re Subpoena to Pasquale Anthony Cipollone*, 26-mc-00142, ECF No. 13 at 3 (D.D.C. Nov. 10, 2026). Accordingly, granting this motion would ensure consistent rulings on closely related discovery disputes. *See Georgetown*, 2026 WL 2211247, at *3 (explaining that transfer is warranted in part because the issuing court "ha[d] already grappled" with similar nonparty subpoena disputes). Transfer is, thus, "in the interests of judicial economy and [would] avoid[] inconsistent results." *Id.* at *2 (quoting *Wultz*, 304 F.R.D. at 46); *see also Fed. Home Loan Mortg. Corp.*, 309 F.R.D. at 43 (concluding that the issuing court was "better situated to deal with the full scope of issues raised in the Motion to Compel" in part because "the magistrate judge ha[d] already resolved various discovery disputes"); Fed. R. Civ. P. 45, advisory committee notes to the 2013 amendments (explaining that transfer is warranted when "the same issues are likely to arise in discovery in many districts").

Lastly, as evident by the BBC's own arguments, resolving the subpoena dispute requires

interpretation of the Issuing Court's various discovery rulings. *See* ECF No. 1-1, Mem. of P. & A. in Supp. of Pet'r's Mot. to Compel the Dep. of Jack Smith & to Authorize Disclosure of Certain Grand Jury Information ("Mot. to Compel") at 9 (arguing that "Magistrate Judge Lett has ruled that the BBC 'is entitled to discover the contours of the message and impression [as to President Trump's January 6 speech].'" (quoting *Trump v. BBC*, Omnibus Order at 9) (alteration in original)). This Court should thus transfer this subpoena dispute because "it [is] far more appropriate for the [Issuing Court] to define the contours of its own order." *In re Info. Tech. Mgmt. Servs. Inc.*, 2025 WL 27156, at *4 (D.D.C. Jan. 3, 2025).

*2. Resolving the motion to compel would benefit from familiarity with the underlying dispute.*

Additionally, exceptional circumstances weigh in favor of transfer where, as here, resolving the subpoena dispute would benefit from the Issuing Court's familiarity with the underlying claims. *See, e.g.*, *Georgetown*, 2026 WL 2211247, at *3 (reasoning that transfer was warranted because "the issuing court [was] in a better position to evaluate relevance due to its full understanding of the underlying action"); *see also In re Subpoena to Pasquale Anthony Cipollone*, 26-mc-00142, ECF No. 13 at 3 (D.D.C. Nov. 10, 2026) (considering "the issuing court's familiarity with the underlying litigation" when examining whether to transfer the dispute regarding the subpoena issued to Mr. Cipollone).

The BBC argues that Mr. Smith's testimony is "the most relevant evidence to rebut President Trump's assertion of falsity," because the BBC says that "President Trump must affirmatively *prove* (not merely allege) that he did not incite or foment violence on January 6." Motion to Compel at 7-8. Yet Judge Kuntz has already rejected the notion that the events of January 6 are central to the case in quashing the subpoena to Ms. Hutchinson, a White House aide as of January 6, 2021. *See In re Hutchinson*, Order Quashing Subpoena. Judge Kuntz explained that

although the BBC sought testimony about "the events of January 6, 2021," that "testimony seems largely irrelevant to the narrow issue in this lawsuit." *Id.* at 4. That is because "this case is about a documentary aired by the BBC and, specifically, an allegation that the BBC 'spliced' two statements together that were actually made more than 55 minutes apart." *Id.* He warned that allowing the subpoena of Ms. Hutchinson would "turn the discovery in this lawsuit into a fishing expedition." *Id.* at 4-5. Similarly, here, "[t]he issuing court is . . . better positioned to analyze . . . [whether] the subpoena constitutes an improper fishing expedition." *Georgetown*, 2026 WL 2211247, at *3; *cf. Watts*, 482 F.3d at 509 (acknowledging "the government's interest in not being used as a speakers' bureau for private litigants" (citation omitted)).

Judge Kuntz further explained his conception of the case in his order denying in part and granting in part the BBC's motion to dismiss. *See Trump v. BBC*, Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss, ECF No. 209 ("*Trump v. BBC*, MTD Order"). As Judge Kuntz explained, the BBC's Chairman has "admit[ted] Trump never made the statements as aired," apologizing for giving "the mistaken impression that [President Trump] had made a direct call for violent action." *Id.* at 4. Thus, Judge Kuntz found it "puzzling[]" that the BBC would argue "that the speech called for violence, in direct contradiction of the Chairman's own words." *Id.* at 21 n.5. Given the Issuing Court's familiarity with the underlying defamation claim, it is in a far better position to determine whether an order compelling the testimony of Mr. Smith is warranted. *See In re Braden*, 344 F. Supp. 3d at 94 ("Transfer is necessary to allow the court that is most familiar with Plaintiffs' core arguments . . . to evaluate the importance of the documents sought in the subpoenas at issue to those core argument.").

3. *The factors in favor of transfer outweigh any burden on Mr. Smith.*

In examining whether transfer is appropriate, this Court must "carefully balance the interest

of the nonparty in obtaining local resolution of their motion against the interest in ensuring the efficient, fair and orderly progress of ongoing litigation before the issuing court." *Georgetown*, 2026 WL 2211247, at *2 (citation omitted). This balance plainly tips in favor of transfer.

For starters, it is not clear whether a substantive "burden" inquiry is even warranted here given the fact that Mr. Smith is not actively litigating the subpoena dispute. After all, the burden inquiry examines "the interest of the nonparty in obtaining local resolution of their *motion*." *Id*. (emphasis added) (citation omitted). Thus, when considering the "burden" of transfer, courts analyze whether transfer would impose a litigation burden. *See, e.g., In re Disposable Contact Lens Antitrust Litig.,* 306 F. Supp. 3d 372, 380 (D.D.C. 2017) ("[T]ransferring this case (which would effectively only require Respondent to refile an opposition brief that he has already submitted) 'does not rise to the level of unfair prejudice' to Respondent." (quoting *Wultz*, 304 F.R.D. at 45)); *In re Braden*, 344 F. Supp. 3d at 95 ("[T]he general interest in protecting local nonparties by requiring local resolution of subpoena-related disputes is significantly reduced because [the subpoenaed parties are] represented by a firm familiar with this litigation and the issuing court." (quoting *Lipman*, 284 F.Supp.3d at 11)). But to date, the Department of Justice—not Mr. Smith—has litigated this dispute. That is because the BBC's motion is in substance a challenge to the Department's November 2 *Touhy* response. And it is difficult to see how the Department's defense of its own *Touhy* response in the Southern District of Florida would impose any burden on Mr. Smith. *Cf. New York v. Rinner*, 2026 WL 530580, at *3 (E.D.N.Y. Feb. 25, 2026) (transferring in part because the subpoena dispute was litigated by Department of Justice attorneys who represented the respondent—a former Department of Justice employee—in the subpoena dispute). To the extent that Mr. Smith's nonconsent is driven by a mere venue preference—as opposed to an anticipated litigation "burden"—it should have little bearing on the

Court's analysis. *See In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d at 379 (transferring the motion in part because the subpoenaed party "fail[ed] to show—and th[e] Court [could not] discern—how a transfer would impose any burden on [him] at all").

Moreover, even assuming Mr. Smith becomes actively involved in litigating the subpoena dispute at some future point, a transfer would impose little, if any, burden on him. Mr. Smith "is represented by sophisticated counsel who work at a major law firm," *Georgetown*, 2026 WL 2211247, at *4, which is almost certainly capable of representing clients in the Southern District of Florida.[2] Nor is there indication that the transfer would impose a burden on Mr. Smith's resources. And in any event, "[a]bsent unusual circumstances, the cost of litigation alone does not constitute an unfair burden." *In re Braden*, 344 F. Supp. 3d at 95 (quoting *Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *7 (D. Nev. Aug. 15, 2014)). Simply put, Mr. Smith "is not the kind of 'local' party about which the Advisory Committee was likely concerned." *Fed. Home Loan Mortg. Corp.*, 309 F.R.D. at 44 (citation omitted).

In sum, because Mr. Smith has had no involvement in litigating this subpoena dispute in either this Court or the Issuing Court, the "burden" on him personally (if any) from a transfer of this dispute "is far outweighed by the exceptional circumstances" outlined above. *Id.*

**CONCLUSION**

For the above reasons, this Court should transfer the motion to compel to the Issuing Court.

Dated: November 17, 2026

Respectfully submitted,

JONATHAN D. GUYNN

[2] Mr. Smith is represented by Peter Koski and Lanny Breuer from Convington & Burling LLP, which touts its ability to "help clients solve their most complex problems anywhere in the world." *Regions*, Covington & Burling LLP, https://www.cov.com/en/regions (last visited Nov. 17, 2026).

Acting Assistant Attorney General
Civil Division

ALEXANDER HAAS
Director, Federal Programs Branch

JACQUELINE COLEMAN SNEAD
Deputy Director, Affirmative Section
Enforcement and Affirmative Litigation

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

JEREMY S.B. NEWMAN
Chief Litigation Counsel
Civil Division, Federal Programs Branch

*/s/ Pardis Gheibi*
PARDIS GHEIBI (D.C. Bar No. 90004767)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

*Attorneys for the Respondent*