**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ***IN RE SUBPOENA TO JACK SMITH***<br><br>BRITISH BROADCASTING CORP.,<br>Petitioner,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE – CIVIL DIVISION, FEDERAL PROGRAMS BRANCH,<br><br>Respondent. | Case No. 1:26-mc-00188 (JEB) |

**OPPOSITION TO MOTION TO COMPEL THE DEPOSITION OF JACK SMITH AND TO AUTHORIZE DISCLOSURE OF CERTAIN GRAND JURY INFORMATION**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 6

I. The Motion to Compel Should Be Denied Because It Seeks Privileged Testimony and any Nonprivileged Testimony Would Be Duplicative of Mr. Smith's Prior Public Testimonies and Report. ........ 6

A. The Sought Testimony Is Privileged. ........ 8

*1. The Sought Testimony Implicates Grand-Jury-Secrecy Privilege.* ........ 8

*2. The Sought Testimony Implicates Classified-Information Privilege.* ........ 10

B. Mr. Smith's Public Report and Testimonies Serve as Sufficient Substitutes. ........ 11

II. The Court Should Reject the BBC's Request Under Rule 6(e)(3)(E)(i) to Authorize Mr. Smith to Disclose Grand Jury Information. ........ 13

A. Legal Principles Regarding Grand Jury Secrecy ........ 13

B. The BBC Has Not Made a Strong Showing of Particularized Need for a Prosecutor's Second-Hand Recollection of Evidence from a Grand Jury Investigation He Conducted Years Ago. ........ 16

*1. The BBC Cannot Show that Mr. Smith's Testimony Is Necessary to Avoid Injustice.* ........ 17

*2. The BBC Cannot Show that the Need for Disclosure of Grand Jury Information by Mr. Smith Outweighs the Need for Grand Jury Secrecy.* ........ 20

*3. The Breadth and Vagueness of the BBC's Request Weighs Against the Request.* ........ 21

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**Cases**

*Bartko v. U.S. Dep't of Just.*,
898 F.3d 51 (D.C. Cir. 2018) .......... 8, 9, 14, 15

*Branzburg v. Hayes*,
408 U.S. 665 (1972) .......... 13, 14

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
318 F. Supp. 3d 347 (D.D.C. 2018) .......... 7

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) .......... 21

*Doe v. Cabrera*,
126 F. Supp. 3d 160 (D.D.C. 2015) .......... 22

* *Douglas Oil Co. of Cal. v. Petrol Stops N.W.*,
441 U.S. 211 (1979) .......... *passim*

*Hickman v. Taylor*,
329 U.S. 495 (1947) .......... 19

*Hodge v. FBI*,
703 F.3d 575 (D.C. Cir. 2013) .......... 8, 9, 14, 15

* *In re Application of Conrad Smith*,
No. 1:24-mc-165, 2025 WL 843279 (D.D.C. Mar. 18, 2025) .......... 17, 22

*In re Application of New York Times Co.*,
No. 1:22-mc-100, 2025 WL 1905544 (D.D.C. July 10, 2025) .......... 21

*In re Application of Politico*,
No. 23-5071, 2024 WL 1739096 (D.C. Cir. Apr. 23, 2024) .......... 15

*In re Grand Jury Subpoena, Judith Miller*,
438 F.3d 1141 (D.C. Cir. 2006) .......... 14

*In re Grand Jury Subpoena, Judith Miller*,
493 F.3d 152 (D.C. Cir. 2007) .......... 15

*In re Micron Tech., Inc. Sec. Litig.*,
264 F.R.D. 7 (D.D.C. 2010) .......... 6, 7

*In re Motions of Dow Jones & Co.*,
142 F.3d 496 (D.C. Cir. 1998) .......... 14, 15

*In re North*,
16 F.3d 1234 (D.C. Cir. 1994) .......... 15

*In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Procs. Concerning Former Vice President Pence*,
678 F. Supp. 3d 135 (D.D.C. 2023) .......... 15

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) .......... 21

*In re Sealed Case*,
199 F.3d 522 (D.C. Cir. 2000) .......... 14

* *McKeever v. Barr*,
920 F.3d 842 (D.C. Cir. 2019) .......... 15, 20

*Miccosukee Tribe of Indians of Fla. v. United States*,
566 F.3d 1257 (11th Cir. 2009) .......... 7

*Moore v. Armour Pharm. Co.*,
927 F.2d 1194 (11th Cir. 1991) .......... 7

*Pitch v. United States*,
953 F.3d 1226 (11th Cir. 2020) .......... 20

*Pitts v. United States*,
830 F. Supp. 3d 1299 (N.D. Ga. 2026) .......... 7

*United States ex rel. Touhy v. Ragen*,
340 U.S. 462 (1951) .......... 4

*United States v. Kellogg Brown & Root Servs.*,
284 F.R.D. 22 (D.D.C. 2012) .......... 13

*United States v. Nixon*,
418 U.S. 683 (1974) .......... 21

*United States v. Reese*,
561 F.2d 894 (D.C. Cir. 1977) .......... 9, 10

* *United States v. Sells Eng'g*,
463 U.S. 418 (1983) .......... 13, 14, 15, 16

*United States v. Williams*,
504 U.S. 36 (1992) .......... 14

* *Watts v. SEC.*,
482 F.3d 501 (D.C. Cir. 2007) .......... 6, 7, 11, 12

**Rules**

Fed. R. Civ. P. 26(b)(1) .......... 7

Fed. R. Civ. P. 26(b)(2) .......... 12

Fed. R. Civ. P. 26(b)(2)(C)(i) .......... 12

Fed. R. Civ. P. 45(d)(3)(A)(iii) .......... 7, 8, 9

* Fed. R. Crim. P. 6(e)(2)(B) .......... 8, 14

Fed. R. Crim. P. 6(e)(3)(E)(i) .......... 15, 16

Fed. R. Evid. 1002 .......... 19

Fed. R. Evid. 602 .......... 19

Fed. R. Evid. 802 .......... 19

**Regulations**

28 C.F.R. § 16.21 .......... 4

28 C.F.R. § 16.26(a)(2) .......... 7, 8

28 C.F.R. § 16.26(b)(1) .......... 8

28 C.F.R. §16.26(b)(3) .......... 10

## INTRODUCTION

The British Broadcasting Corporation ("BBC") seeks to depose former Special Counsel Jack Smith—not because he has any personal knowledge of what occurred on January 6, 2021 (he does not)—but because he was the chief prosecutor who oversaw the subsequent investigation and prosecution related to the events of January 6. Specifically, the BBC seeks Mr. Smith's "testimony regarding the evidence that Mr. Smith obtained over the course of his investigation [of the events of January 6]." *See* Ltr. From M. Mishkin to P. Gheibi (Oct. 28, 2026) ("BBC Letter") at 2 (Exhibit A). The BBC seeks this information because it believes the information will shed light on whether "President Trump incited violence on January 6." ECF No. 1-1, Mem. of P. & A. in Supp. of Pet'r's Mot. to Compel the Dep. of Jack Smith & to Authorize Disclosure of Certain Grand Jury Information ("Mot. to Compel") at 3.

To the extent that any such testimony would disclose information protected by the grand-jury-secrecy rule or classified-information privilege, however, Mr. Smith is not at liberty to disclose it. And as the BBC itself has previously acknowledged, the privileged information it seeks cannot be easily isolated from any nonprivileged information encompassed in its request. Besides, to the extent that the sought testimony encompasses nonprivileged information, Mr. Smith's extensive public testimonies and report are adequate substitutes.

Even if the Court allowed Mr. Smith to testify, it should deny the BBC's request to authorize him to disclose his recollections of matters occurring before the grand jury. Courts can authorize disclosure of grand jury information for use in another judicial proceeding only where the petitioner has made a strong showing of particularized need, that disclosure is necessary to avoid injustice, the need for the information outweighs the need for secrecy, and the petition is tailored to request only necessary information. The BBC can make none of those showings. Recent

rulings issued by the district judge presiding over the underlying defamation suit demonstrate that the events of January 6, 2021, are at most, tangentially relevant to the case. And Mr. Smith has no first-hand knowledge of those events, but instead only has recollections of an investigation he conducted years ago. Yet the BBC asks this Court to authorize Mr. Smith to disclose his recollections of grand jury evidence. Allowing the prosecutor of such a high-profile investigation to offer such testimony would undermine the functioning of the grand jury system by sending a signal to future grand jury witnesses that their testimony is not really secret.

## BACKGROUND

The BBC seeks Mr. Smith's testimony in connection with a suit pending in the Southern District of Florida ("Issuing Court") entitled *Trump v. British Broadcasting Corporation* ("*Trump v. BBC*"), No. 1:25-cv-25894 (S.D. Fla. Dec. 15, 2025), brought by President Donald J. Trump in his individual capacity against the BBC for defamation. The crux of the defamation suit is that a 2024 BBC documentary contained a "false, defamatory, deceptive, disparaging, inflammatory, and malicious depiction of President Trump" and his speech on January 6, 2021, *Trump v. BBC*, First Am. Compl. ¶¶ 1-2, ECF No. 124, "to maliciously, falsely, and defamatorily make it appear that President Trump explicitly called for violent action and rioting," *id.* ¶ 6.

District Judge Kuntz and Magistrate Judge Lett, who are overseeing the defamation suit, have issued multiple discovery and case-management orders. As relevant here, Magistrate Judge Lett issued an omnibus-discovery order on August 6, 2026. *Trump v. BBC*, Omnibus Order Following Disc. Hr'g on Joint Mot. for Disc. Hr'g, ECF No. 120 ("*Trump v. BBC*, Omnibus Order"). In it, she reasoned that the "Defendant is entitled to discover Plaintiff's intention behind the speech and anything that bears on the impression his audience could have reasonably obtained in listening to the speech." *Id.* at 11. But she also made clear "that the scope of discovery is not

unlimited in nature," *id.* at 9, and that "the Complaint does not extend so far as to entitle [the BBC] to relitigate and discover every aspect of the events of January 6, 2021 and seek discovery from any and all individuals who may have knowledge regarding the day's events," *id.* at 11.

Importantly, Judge Kuntz further clarified the scope of discovery in a recent order quashing a subpoena issued to Cassidy Hutchinson, who served as a White House aide on January 6, 2021. *See Trump v. BBC*, Order Consolidating Cases and Quashing Subpoena, ECF No. 175 ("*In re Hutchinson*, Order Quashing Subpoena"). In that order, Judge Kuntz explained that the underlying issue in the defamation suit is "narrow." *Id.* at 4. As he further emphasized, this "case is about a documentary aired by the BBC and, specifically, an allegation that the BBC 'spliced' two statements together that were actually made more than 55 minutes apart." *Id.* Judge Kuntz echoed Magistrate Judge Lett's caution that "the Complaint does not extend so far as to entitle [the BBC] to relitigate and discover every aspect of the events of January 6, 2021 and seek discovery from any and all individuals who may have knowledge regarding the day's events." *Id.* (quoting *Trump v. BBC*, Omnibus Order at 11). He then granted the motion to quash by concluding, in part, that testimony from Ms. Hutchison regarding the "events of January 6, 2021," was not sufficiently relevant to the underlying defamation dispute. *See id.*

Additionally, in his recent motion-to-dismiss opinion, Judge Kuntz stated that the BBC's Chairman has already "admitted that the documentary gave a misleading and mistaken impression that Trump made a direct call for violent action." *See Trump v. BBC*, Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss, ECF No. 209 ("*Trump v. BBC*, MTD Order") at 16. Thus, the court found it "puzzling[] . . . that BBC continues down this path by implicitly alleging that the speech called for violence, in direct contradiction of the Chairman's own words." *Id.* at 21 n.5.

As relevant here, on October 1, 2026, the BBC issued a deposition subpoena to Mr. Smith. Upon receiving the subpoena, Mr. Smith—recognizing that he lacks the authority to provide official-capacity testimony without the Department's authorization—notified the Department of the subpoena, and further informed the Department that he does not intend to testify without the Department's authorization, which is required pursuant to the Department's *Touhy* regulations. 28 C.F.R. § 16.21 *et seq.* (*Touhy* regulations); *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). On October 19, 2026, the Plaintiff, President Trump in his individual capacity, and the BBC filed a joint motion for discovery hearing on the subpoena to Mr. Smith. *See Trump v. BBC*, Joint Mot. for Disc. Hr'g, ECF No. 189. In that motion, the BBC outlined its argument in support of its requested subpoena to Mr. Smith and Plaintiff outlined his arguments in favor of quashing the subpoena. *See id.* at 1-5. On October 22, 2026, Magistrate Judge Lett held a discovery hearing regarding the subpoena to Mr. Smith. *See id.*, Oct. 22, 2026 Paperless Minute Entry, before Magistrate Judge Lett, ECF No. 196. On October 27, 2026, Magistrate Judge Lett granted, without prejudice, Plaintiff's *Ore Tenus* Motion for Protective Order Regarding Subpoena to Non-Party Jack Smith. *See id.*, Oct. 27, 2026 Paperless Order, ECF No. 204. Magistrate Judge Lett also ordered the Government to respond to Mr. Smith's letter regarding the BBC's subpoena by November 2, 2026. *See id.*

Specifically, in its October 27, 2026 Paperless Order, Magistrate Judge Lett considered, among other things, the application of "Rule 6(e) of the Federal Rules of Criminal Procedure[,] [which] prohibits the disclosure of grand jury proceedings." *Id.*; *see also id.* ("Mr. Smith has testified before Congress that he has shared everything possible without running afoul of Rule 6, and therefore, Plaintiff argues it is unlikely that Mr. Smith will offer any additional information that is not already publicly available."). Moreover, given the fact that "Mr. Smith only possesses

relevant knowledge based on investigations conducted in his official capacity having been appointed special counsel under the Department of Justice," Magistrate Judge Lett acknowledged the application of the Department of Justice's *Touhy* regulations. *Id.* Because the Department of Justice had not yet responded to Mr. Smith's *Touhy* inquiry or authorized his testimony, she ordered the Department to "respond to Mr. Smith's correspondence regarding his request to provide testimony in compliance with the subpoena issued by Defendant in this matter" by November 2, 2026. *Id.* Additionally, she considered the relevance of the sought testimony. Specifically, she acknowledged that her prior discovery order made clear that "the Complaint does not extend so far as to entitle Defendant to relitigate and discover every aspect of the events of January 6, 2021 and seek discovery from any and all individuals who may have knowledge regarding the day's events." *Id.* (quoting *Trump v. BBC*, Omnibus Order at 11). And yet, "Mr. Smith's role as Special Counsel was just that - litigating and discovering the events of January 6, 2021." *Id.* She also stated that "Mr. Smith has information surrounding the 'contours of [President Trump's] message and impression.'" *Id.* (quoting *Trump v. BBC*, Omnibus Order at 9) (alteration in original). In doing so, she explained that "[b]oth parties' arguments are well taken concerning the need to circumscribe discovery so that ancillary matters don't swallow the primary issues while allowing the parties the latitude permitted by the Federal Rules to develop their respective cases." *Id.* Ultimately, Magistrate Judge Lett concluded that "procedural thresholds prevent the Court from allowing such testimony at this juncture." *Id.*

On October 26, 2026, the Department sent a letter to counsel for the BBC, requesting further details regarding their subpoena request to Mr. Smith. *See* Ltr. From P. Gheibi to C. Tobin (Oct. 26, 2026) (Exhibit B). On October 28, 2026, the BBC responded to the Department's letter by stating that its request seeks testimony from Mr. Smith "regarding the evidence that Mr. Smith

obtained over the course of his investigation" into the events of January 6, 2021, and "the sources of his evidence (including . . . name[s] [of] specific witnesses)." BBC Letter at 2-3.

On November 2, 2026, the Department notified the BBC and Mr. Smith that it does not authorize Mr. Smith's sought testimony. *See* Ltr. From P. Gheibi to C. Tobin (Nov. 2, 2026) ("November 2 *Touhy* response") (Exhibit C); *see* Ltr. From P. Gheibi to L. Breuer and P. Koski (Nov. 2, 2026) (Exhibit D). The Department also notified the Issuing Court of its *Touhy* response. *See Trump v. BBC*, Notice Regarding the Dep. Subpoena to Jack Smith, ECF No. 206.

In response, the BBC moved to compel the deposition of Mr. Smith while simultaneously requesting that this Court authorize Mr. Smith to testify to certain grand jury information pursuant to Federal Rule of Criminal Procedure 6(e)(3)(E)(i). On November 17, 2026, the Government moved to transfer the BBC's motion to compel to the Issuing Court pursuant to Federal Rule of Civil Procedure 45(f). *See* ECF No. 9.

## ARGUMENT

### I. THE MOTION TO COMPEL SHOULD BE DENIED BECAUSE IT SEEKS PRIVILEGED TESTIMONY AND ANY NONPRIVILEGED TESTIMONY WOULD BE DUPLICATIVE OF MR. SMITH'S PRIOR PUBLIC TESTIMONIES AND REPORT.

The BBC's motion to compel is, in substance, a challenge to the Department of Justice's refusal to authorize Mr. Smith to testify pursuant to the Department's *Touhy* regulation. Importantly, the standard of review for resolving this challenge differs depending on whether this motion is adjudicated in this district, or transferred to the Southern District of Florida, as requested by the Government. *See id.* In the D.C. Circuit, "Rule 45 . . . supplies the standards under which district courts assess agency objections to a subpoena." *Watts v. SEC.*, 482 F.3d 501, 508 (D.C. Cir. 2007); *see also In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 8 (D.D.C. 2010) (explaining that the Department of Justice's refusal to authorize discovery pursuant to its *Touhy* regulation is

analyzed under Rule 45). "[W]hen deciding a motion to compel under Rule 45, the district court first must consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined in Rule 26(b)(1)." *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). Importantly, under Rule 26(b)(1), "relevant" discovery is limited to "nonprivileged" evidence. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). "Next, the court must assess any objections to the subpoena under the standards supplied by Rule 45, which 'requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden.'" *BuzzFeed, Inc.*, 318 F. Supp. 3d at 356 (quoting *Watts*, 482 F.3d at 508); *see also id.* (explaining that Rule 45 "requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden"). As a general matter, "the party resisting discovery" bears the burden of "show[ing] that the [evidence] requested [is] either unduly burdensome or privileged." *Id.* (citation omitted).

In the Eleventh Circuit, however, an agency's *Touhy* response is reviewed under the Administrative Procedure Act's arbitrary-and-capricious standard. *See Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991). This standard is "exceedingly deferential." *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009) (citation omitted). The burden is on the party challenging the agency action to show that the "decision to prohibit [the sought] testimony was a clear error of judgment." *Pitts v. United States*, 830 F. Supp. 3d 1299, 1307 (N.D. Ga. 2026).

But regardless of which standard of review is ultimately applied to this dispute, the BBC's motion to compel should be denied. Under Rule 45, the BBC cannot seek the disclosure of privileged testimony. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (providing that the Court "must quash . . .

a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies"); *see also* 28 C.F.R. § 16.26(a)(2) ("In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider . . . [w]hether such disclosure is appropriate under the relevant substantive law concerning privilege."). As explained below, the testimony sought is protected by multiple layers of privilege, including the grand-jury-secrecy privilege and classified-information privilege. Importantly, given the nature of the BBC's request, the privileged testimony cannot be readily isolated from any nonprivileged testimony. Additionally, Mr. Smith's various public testimonies and report serve as adequate substitutes for any nonprivileged testimony encompassed within the BBC's request. Accordingly, the Court should deny the BBC's motion to compel.

**A. The Sought Testimony Is Privileged.**

*1. The Sought Testimony Implicates Grand-Jury-Secrecy Privilege.*

The Department properly denied the BBC's request under the Department's *Touhy* regulations because the sought testimony implicates grand jury information, which is barred from disclosure under Federal Rule of Criminal Procedure 6(e). *See* Fed. R. Crim. P. 6(e)(2)(B) (barring the disclosure of "matters occurring before the grand jury"); *see also* 28 C.F.R. § 16.26(b)(1) (providing that "disclosure will not be made" if it "would violate . . . the grand jury secrecy rule" under Rule 6(e)). Specifically, in its letter to the Department, the BBC requested "testimony regarding the evidence that Mr. Smith obtained over the course of his investigation," BBC Letter at 2, and "the sources of his evidence (including . . . name[s] [of] specific witnesses)," *id*. at 3. This request plainly implicates the grand-jury-secrecy rule, which extends to "information that would 'tend to reveal some secret aspect of the grand jury's investigation, including the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the

deliberations or questions of jurors.'" *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 73 (D.C. Cir. 2018) (quoting *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013)). Indeed, the BBC dispelled any doubt that it seeks grand jury information by simultaneously moving for relief from the grand-jury-secrecy rule in its motion to compel. *See* Mot. to Compel at 7-9; *see also id.* at 8 (arguing that Mr. Smith's "deposition testimony would likely reflect information not fully discussed in his Report, including evidence currently subject to Rule 6(e) sealing").

Moreover, even the BBC itself cannot determine whether *any* of the sought testimony (that is not otherwise publicly available) falls outside the grand-jury-secrecy parameters. *See Trump v. BBC*, Oct. 22, 2026 Hr'g Tr. at 80:14-18, 80:22-25, ECF No. 197 (responding to the court's question as to whether the "BBC agree[s] that the only additional firsthand information that Jack Smith can provide outside of his reports and numerous public testimony, is . . . grand jury information, under the purview of Federal Rule of Criminal Procedure 6," counsel for the BBC stated: "As far as the 6(e) question, your Honor, the candid answer is I do not know until I ask [Mr. Smith] and until he tells me that I'm wandering into grand jury information.").

The BBC's own assessment, coupled with its failure to seek any specific, nonprivileged, relevant testimony from Mr. Smith, provides grounds to deny the motion to compel in its entirety. Thus, the motion to compel can—and should—be denied solely on the basis that the sought testimony seeks information subject to the grand-jury-secrecy rule. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii) (providing that the Court "must quash . . . a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies"); *cf. United States v. Reese*, 561 F.2d 894, 900 (D.C. Cir. 1977) (concluding that it was appropriate for the court to excuse the witness from testifying altogether because "[v]irtually the only relevant matters about which [the witness] might have been questioned" implicated his Fifth Amendment right against

self-incrimination). Although the BBC seeks an exception to the privilege by requesting that the Court authorize Mr. Smith to disclose grand jury information under Rule 6(e)(3)(E)(i), that request should be denied for the reasons outlined below. *See* Part II, *infra*.

2. *The Sought Testimony Implicates Classified-Information Privilege.*

Additionally, the sought testimony implicates classified information. *See* 28 C.F.R. §16.26(b)(3) (providing that "disclosure will not be made" if it "would reveal classified information, unless appropriately declassified by the originating agency"). In its letter to the Department, the BBC sought "testimony regarding the evidence that Mr. Smith obtained over the course of his investigation [regarding the events of January 6, 2021]." BBC Letter at 2. Given the sprawling nature of this request,[1] it encompasses classified information as evident by the classified-information protective order that was issued in *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C. Aug. 22, 2023), CIPA Protective Order Pertaining to Classified Information, ECF No. 37. This protective order, which was issued under the Classified Information Procedures Act ("CIPA"), governed the handling of classified information in connection with the criminal prosecution arising out of the former Special Counsel's investigation regarding the events of January 6, 2021. The court issued the protective order after concluding that "[the] case will involve classified national security information, the storage, handling, and control of which, by law or regulation, requires special security precautions, and access to which requires a security clearance and a need-to-know." *Id.* ¶ 1.

[1] The BBC's *Touhy* request did not identify any targeted requests for specific testimony. Rather, it made an unrestrained request for any and all "testimony regarding the evidence that Mr. Smith obtained over the course of his investigation [regarding the events of January 6, 2021]." BBC Letter at 2. Thus, the Department reasonably concluded that the request encompasses some classified information given the mere existence of the protective order in *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C. Aug. 22, 2023), CIPA Protective Order Pertaining to Classified Information, ECF No. 37.

In response, the BBC argues that "the DOJ's assertion of the classified information privilege is premised, to some degree, on the erroneous belief that the BBC seeks testimony regarding *Volume 2* of Mr. Smith's report." Mot. to Compel at 13. That is incorrect. The BBC is confusing two separate prosecutions. The above-referenced CIPA Protective Order was issued in *United States v. Trump*, No. 1:23-cr-00257-TSC (D.D.C. Aug. 22, 2023), CIPA Protective Order Pertaining to Classified Information, ECF No. 37. That prosecution arose out of *Volume 1* records, which pertain to the events of January 6, 2021—*i.e.*, the information the BBC seeks here. Volume 2 records, on the other hand, pertain to an entirely different prosecution in the Southern District of Florida regarding the handling of documents after President Trump's first term, including at his residence in Florida. *See United States v. Trump,* No. 9:23-cr-80101-AMC (S.D. Fla. June 8, 2023). The Government does not rely on any protective order issued in the Florida prosecution.

As a fallback, the BBC pivots to arguing that the Government's reliance on classified-information privilege is a "strawman argument" because the sought testimony "also includes *unclassified* information, as made clear by the fact that Mr. Smith was able to produce a [146]-page report on his conclusions regarding . . . January 6, without ever risking the disclosure of classified information." Mot. to Compel at 13. This argument fails on its own terms. As the BBC seemingly acknowledges, Mr. Smith has already issued a lengthy public, unclassified report regarding the evidence the BBC seeks. And the BBC fails to identify what, if any, unclassified evidence exists that is both absent from the report *and* relevant to the defamation dispute.

**B. Mr. Smith's Public Report and Testimonies Serve as Sufficient Substitutes.**

Additionally, any nonprivileged testimony encompassed in the BBC's request would be cumulative and unnecessary given Mr. Smith's extensive public testimonies to Congress and his lengthy public report, which independently warrants denying the BBC's motion to compel. *See*

*Watts*, 482 F.3d at 509 (explaining that courts must assess "whether the discovery is 'unreasonably cumulative or duplicative'" and "whether the discovery sought is 'obtainable from some other source that is more convenient, less burdensome, or less expensive'" (quoting Fed. R. Civ. P. 26(b)(2))).[2] As Magistrate Judge Lett has already acknowledged, there is a "wealth of public information . . . concerning Special Counsel Smith's investigation, conclusions, and findings." *Trump v. BBC*, Oct. 22, 2026 Hr'g Tr. at 68:11-13, ECF No. 197. Specifically, Mr. Smith issued a 146-page report on his investigation, which the Department of Justice later released publicly. *See* Special Counsel Jack Smith, Final Report on the Special Counsel's Investigations and Prosecutions, Volume One: The Election Case (Jan. 7, 2025), https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf ("Special Counsel Report"). Mr. Smith has also testified to Congress three times, and video of that testimony, which totals over 18 hours, is publicly available. *See* U.S. Senate Committee on the Judiciary, Oversight of Jack Smith's Abuse of Authority and the Targeting of Republicans and Related Matters (Sep. 29, 2026), https://www.judiciary.senate.gov/committee-activity/hearings/oversight-of-jack-smiths-abuse-of-authority-and-the-targeting-of-republicans-and-related-matters; House Judiciary Committee, Oversight of the Office of Special Counsel Jack Smith (Jan. 22, 2026), https://www.congress.gov/committees/video/house-judiciary/hsju00/EdHfPqCTOgs; Jack Smith Deposition, https://www.youtube.com/watch?v=lR-bhPzQYUE (video of testimony to House Judiciary Committee on December 17, 2025). Given this extensive publicly available information, the sought testimony is unnecessary, and would be unreasonably cumulative. *See Watts*, 482 F.3d at 509 (acknowledging "the government's interest in not being used as a speakers' bureau for private litigants" (citation omitted)).

[2] This language now appears in slightly modified form in Fed. R. Civ. P. 26(b)(2)(C)(i).

Nor can the BBC depose Mr. Smith merely because he *may* possess information that has not been publicly disclosed *and* is unclassified/unprivileged *and* relevant to the dispute. Where, as here, the BBC fails to identify what specific information (if any) it seeks from Mr. Smith that is (1) nonpublic, (2) nonprivileged, and (3) relevant, its deposition subpoena is a mere "fishing expedition" akin to its now-quashed subpoena to Ms. Huchinson. *See In re Hutchinson*, Order Quashing Subpoena at 4-5; *cf. United States v. Kellogg Brown & Root Servs.*, 284 F.R.D. 22, 34-35 (D.D.C. 2012) (explaining that the requester "should not be allowed to engage in a fishing expedition, requiring the United States to produce vast amounts of potentially sensitive information with little chance of obtaining relevant, admissible evidence").

The BBC also argues that it needs to depose Mr. Smith to ask him about the "trustworthiness of the Report," which the BBC contends would help establish "the admissibility of Mr. Smith's Report." Mot. to Compel at 14. But the Report discussed extensively how Mr. Smith went about conducting the investigation and generating the information that went into the Report. *See* Special Counsel Report at 92-136. And, as noted above, Mr. Smith testified before Congress three times, during which testimony he discussed his Report and faced questioning about it from staff or lawmakers of both parties. Both sides in *Trump v. BBC* have more than sufficient information to argue about whether the Report is admissible.

## II. The Court Should Reject the BBC's Request Under Rule 6(e)(3)(E)(i) to Authorize Mr. Smith to Disclose Grand Jury Information.

### A. Legal Principles Regarding Grand Jury Secrecy

The federal grand jury occupies a unique and important position in our criminal justice system. "It serves the 'dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions.'" *United States v. Sells Eng'g*, 463 U.S. 418, 423 (1983) (quoting *Branzburg v. Hayes*, 408 U.S. 665,

686–87 (1972)). Accordingly, it "serv[es] as a kind of buffer or referee between the Government and the people." *United States v. Williams*, 504 U.S. 36, 47 (1992). To fulfill this important role, the grand jury has "always" been afforded "extraordinary powers of investigation and great responsibility for directing its own efforts." *Sells*, 463 U.S. at 423. The Supreme Court "consistently [has] recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Both "grand jury proceedings and related matters operate under a strong presumption of secrecy." *In re Sealed Case*, 199 F.3d 522, 526 (D.C. Cir. 2000). This rule of secrecy is "so well established" that the D.C. Circuit has noted "a plethora of authority recognizing that the grand jury context presents an unusual setting where privacy and secrecy are the norm." *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1150 (D.C. Cir. 2006) ("*Miller I*") (quoting *In re Sealed Case*, 199 F.3d at 526).

Federal Rule of Criminal Procedure 6(e) implements the traditional rule of grand jury secrecy. It prohibits virtually every person privy to grand jury proceedings—other than witnesses or their counsel—from "disclos[ing] a matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). Covered individuals include grand jurors, interpreters, court reporters, and attorneys for the Government, such as Mr. Smith. *See id.* Rule 6(e) requires that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." *Id.* at 6(e)(6). Matters occurring before the grand jury include "not only what has occurred and what is occurring, but also what is likely to occur" in the grand jury's investigation. *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 500 (D.C. Cir. 1998). The Rule covers all "information that would 'tend to reveal some secret aspect of the grand jury's investigation, including the identities of

witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, or the deliberations or questions of jurors.'" *Bartko*, 898 F.3d at 73 (quoting *Hodge*, 703 F.3d at 580). Rule 6(e) also covers "the fact that [a witness] was subpoenaed to testify" and "the fact that he invoked [a] privilege in response to questions." *Dow Jones*, 142 F.3d at 501. Grand jury secrecy does not expire upon the conclusion of an investigation or a criminal case. *See McKeever v. Barr*, 920 F.3d 842, 843–44 (D.C. Cir. 2019) (holding that records from a grand jury investigation during the 1950s remained protected by Rule 6(e)).

Despite the general rule of grand jury secrecy, under certain circumstances, "when once-secret grand jury material becomes 'sufficiently widely known,' it may 'los[e] its character as Rule 6(e) material.'" *In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) ("*Miller II*") (alteration in original) (quoting *In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994)). One way that "grand jury matters may lose their protection" is "if prosecutors publicly disclose them." *In re Application of Politico*, No. 23-5071, 2024 WL 1739096, at *3 (D.C. Cir. Apr. 23, 2024) (citing *North*, 16 F.3d at 1245). Public disclosure of grand jury matters "by a witness before the grand jury, . . . or a witness's attorney" can also lift grand jury secrecy. *Id.* (citations omitted). Even where such disclosures lift Rule 6(e) secrecy to some extent, redactions may be necessary, because a court must "reveal[] only those matters before the grand jury" that the Government or a witness has disclosed, leaving "[a]ll other 6(e) material . . . tucked safely behind the grand jury's closed doors." *In re Press Application for Access to Jud. Recs. Ancillary to Certain Grand Jury Procs. Concerning Former Vice President Pence*, 678 F. Supp. 3d 135, 143 (D.D.C. 2023) (quoting *Dow Jones*, 142 F.3d at 505).

Rule 6(e) contains an "exhaustive" list of exceptions to the grand-jury-secrecy rule. *McKeever*, 920 F.3d at 845. At issue here is the exception stating that, "[t]he court may authorize

disclosure . . . of a grand-jury matter . . . preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). This exception "require[s] a strong showing of particularized need for grand jury materials before any disclosure will be permitted." *Sells*, 463 U.S. at 443. Even where parties meet the threshold requirement to seek grand jury materials preliminarily to or in connection with a judicial proceeding, they "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222. "[T]he burden of demonstrating" that the "need for [disclosure] outweighs the public interest in secrecy . . . rests upon the private party seeking disclosure." *Id.* at 223. This "standard is 'very demanding' and relief is 'exceedingly rare.'" Mem. Op. at 10, *In re Application for Access to Grand Jury Materials Relating to Hack of Democratic Nat'l Comm.*, Case No. 1:23-mc-133-JEB (D.D.C. Mar. 8, 2024) ("*In re Hack of DNC*"), ECF No. 10 (quoting *United States v. Sutton*, 1:21-cr-598, 2023 WL 5827718, at *3 (D.D.C. Sep. 8, 2023)).

### B. The BBC Has Not Made a Strong Showing of Particularized Need for a Prosecutor's Second-Hand Recollection of Evidence from a Grand Jury Investigation He Conducted Years Ago.

The Government does not dispute that the BBC seeks Mr. Smith's testimony "in connection with a judicial proceeding," Fed. R. Crim. P. 6(e)(3)(E)(i), but the BBC has failed to make the required "strong showing of particularized need," *Sells*, 463 U.S. at 443. In particular, the BBC has not "show[n] that the material [it] seek[s] is needed to avoid a possible injustice in another judicial proceeding," that "the need for disclosure is greater than the need for continued secrecy," or that its "request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222.

1. *The BBC Cannot Show that Mr. Smith's Testimony Is Necessary to Avoid Injustice.*

This Court (the District Court for the District of Columbia) recently applied Rule 6(e)(3)(E)(i) in order to deny a request for grand jury materials by litigants in another case against President Trump in his personal capacity. There, this Court concluded that Supreme Court precedent "impl[ies] that a party can establish that access to grand-jury material is necessary to avoid a possible injustice when the material is central to litigating a case and the party has exhausted the normal discovery process to no avail." *In re Application of Conrad Smith*, No. 1:24-mc-165, 2025 WL 843279, at *4 (D.D.C. Mar. 18, 2025).

The BBC can make neither showing. First, the BBC cannot show that Mr. Smith's testimony is central to its case. As explained below, the district court's rulings show otherwise. The BBC argues that Mr. Smith's testimony is "the most relevant evidence to rebut President Trump's assertion of falsity," because the BBC says that "President Trump must affirmatively *prove* (not merely allege) that he did not incite or foment violence on January 6." Motion to Compel at 7-8. Yet Judge Kuntz has already rejected the notion that the events of January 6 are central to the case in granting the motion to quash a deposition subpoena filed by Cassidy Hutchinson, a White House aide as of January 6, 2021. *See In re Hutchinson*, Order Quashing Subpoena. Judge Kuntz explained that although the BBC sought testimony about "the events of January 6, 2021," that "testimony seems largely irrelevant to the narrow issue in this lawsuit." *Id.* at 4. That is because "this case is about a documentary aired by the BBC and, specifically, an allegation that the BBC 'spliced' two statements together that were actually made more than 55 minutes apart." *Id.* He warned that allowing the subpoena of Ms. Hutchinson would "turn the discovery in this lawsuit into a fishing expedition." *Id.* at 4-5.

Judge Kuntz further explained his conception of the case in his order denying in part and granting in part the BBC's motion to dismiss. *See Trump v. BBC*, MTD Order. As Judge Kuntz explained, "a spliced segment that creates a sentence that Trump never spoke represents the exact kind of false statement of fact that courts hold as the *sine qua non* for recovery in defamation. *Whether the audience 'reasonably interpreted' the segment to convey that Trump called for violence is irrelevant*." *Id.* at 21 (emphasis added). Even if the BBC were correct that Mr. Smith had information relevant to whether President Trump "caused" the violence that occurred on January 6, 2021, Motion to Compel at 8, as Judge Kuntz has reasoned, the alleged false statement is something different, namely, that the BBC "edited a video to make it appear as though President Trump made a statement he never made." *Trump v. BBC*, MTD Order, at 2. And the BBC's Chairman already has "admit[ted] Trump never made the statements as aired," apologizing for giving "the mistaken impression that [President Trump] had made a direct call for violent action." *Id.* at 4. Thus, Judge Kuntz found it "puzzling[]" that the BBC would argue "that the speech called for violence, in direct contradiction of the Chairman's own words." *Id.* at 21 n.5.

If Ms. Hutchinson's testimony is largely irrelevant to this lawsuit, then Mr. Smith's testimony is even less relevant. Ms. Hutchinson at least had first-hand knowledge of the events of January 6, 2021, because she served as an assistant to the White House Chief of Staff on January 6, 2021, and in the months leading up to that date. In contrast, Mr. Smith has no such first-hand knowledge. On January 6, 2021, Mr. Smith was a war crimes prosecutor for the Kosovo Specialist Chambers, a specialized tribunal based in The Hague, Netherlands. *See* Kosovo Specialist Chambers & Specialist Prosecutor's Office, https://www.scp-ks.org/en/spo/former-specialist-prosecutors. He was appointed as Special Counsel nearly two years later, on November 18, 2022. https://www.justice.gov/archives/sco-smith. He led the investigation that resulted in an indictment

of President Trump in this Court on August 1, 2023. *See id.* That case was dismissed on November 25, 2024. *See* Order, *United States v. Trump*, Case No. 1:23-cr-257, ECF No. 283 (D.D.C. Nov. 25, 2024). Thus, Mr. Smith could testify to no more than second-hand and arguably stale recollections of evidence of the events of January 6, 2021, which he may or may not recall accurately from an investigation he oversaw years ago.

Putting aside their irrelevance, such second-hand recollections likely would not even be admissible. Any testimony Mr. Smith offers about the events of January 6, 2021, would fail the requirement that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Furthermore, to the extent that Mr. Smith describes his recollection of testimony offered by a grand-jury witness, or documentary evidence obtained by the grand jury, such testimony would be inadmissible pursuant to several doctrines, including the rule against hearsay, Fed. R. Evid. 802, or the best evidence rule, Fed. R. Evid. 1002; *see also Hickman v. Taylor*, 329 U.S. 495, 513 (1947). ("Forc[ing] [an] attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks . . . could not qualify as evidence.").

Even if Mr. Smith's recollections and opinions about his investigation and prosecution of President Trump were somehow relevant, the BBC already has extensive evidence of those recollections and opinions in the form of Mr. Smith's report and testimony on three occasions before Congress. *See supra*, pp. 12-13. Whatever additional information could be gleaned from putting Mr. Smith under oath for a fourth time is hardly "central to litigating [this] case." *Smith*, 2025 WL 843279, at *4.

The BBC also cannot show that it "has exhausted the normal discovery process to no avail." *Id.* The BBC is actively pursuing discovery from President Trump and a number of third parties.

Although discovery was scheduled to close on December 18, 2026, earlier today, Judge Kuntz extended the discovery cutoff to January 29, 2027. *Trump v. BBC*, Order Granting Second Joint Mot. to Extend & Requiring Conferral and Scheduling of Pl.'s Dep., ECF No. 223, at 3. Because the BBC is still pursuing these avenues of discovery, it cannot show that it has been unsuccessful in obtaining relevant information through the normal avenues of discovery.

*2. The BBC Cannot Show that the Need for Disclosure of Grand Jury Information by Mr. Smith Outweighs the Need for Grand Jury Secrecy.*

The BBC is wrong to argue that its need for Mr. Smith's testimony outweighs the need for grand jury secrecy. The BBC argues that secrecy is not needed because "[t]he work of the grand jury is done." Motion to Compel at 8. But the Supreme Court has explained that "the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities." *Douglas Oil*, 441 U.S. at 222. That is because

> in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries. Persons called upon to testify will consider the likelihood that their testimony may one day be disclosed to outside parties. Fear of future retribution or social stigma may act as powerful deterrents to those who would come forward and aid the grand jury in the performance of its duties.

*Id.* As the D.C. Circuit concisely put it, "[t]he effect of an exception must be evaluated *ex ante*, not *ex post*." *McKeever*, 920 F.3d at 849; *see also Pitch v. United States*, 953 F.3d 1226, 1229 (11th Cir. 2020) (denying request to authorize disclosure of materials from a historically significant grand jury investigation).

Mr. Smith's investigation of President Trump was undoubtedly high-profile. It is difficult to imagine what would send a more chilling signal to grand jury witnesses and the American public that grand jury proceedings are not really secret than if a court gave free rein to the lead prosecutor of that investigation to testify about what occurred before the grand jury. *See McKeever*, 920 F.3d

at 849 (explaining that if a court allowed disclosure of evidence from a concluded grand jury, that would highlight the "risk" that "court[s] will later make [a grand jury] witness's testimony public," which would "likely" cause a "chilling effect on what a witness is willing to say to a grand jury").

Bolstering the need for grand jury secrecy here is the fact that the grand jury obtained information that was subject to the presidential communications privilege. *See generally In re Application of New York Times Co.*, No. 1:22-mc-100, 2025 WL 1905544 (D.D.C. July 10, 2025). Although the presidential communications privilege is qualified, it is "difficult to surmount," and "a party seeking to overcome the presidential privilege seemingly must always provide a focused demonstration of need, even when there are allegations of misconduct by high-level officials." *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997); *see id.* at 749 ("presidential communications deserve special protection"). A party seeking disclosure of presidential communications has the burden to establish its "need" for the privileged materials by "balanc[ing] the public interests served by protecting the President's confidentiality in a particular context with those furthered by requiring disclosure." *Id.* at 753. Here, as explained above, Mr. Smith's recollections of an investigation he conducted years ago have dubious relevance to the underlying dispute. Accordingly, the BBC cannot establish the kind of pressing need for Mr. Smith's testimony that could conceivably overcome the presidential communications privilege. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 384 (2004) ("The right to production of relevant evidence in civil proceedings does not have the same 'constitutional dimensions' as it does in the criminal context." (quoting *United States v. Nixon*, 418 U.S. 683, 711 (1974))).

*3. The Breadth and Vagueness of the BBC's Request Weighs Against the Request.*

Even if the BBC had shown a particularized need, which it has not, it has failed to "structure[]" its request "to cover only material so needed." *Douglas Oil*, 441 U.S. at 222. The

BBC's characterization of its request as seeking only information "narrowly tied to the scope of discovery in *Trump v. BBC*," Mot. to Compel at 9, is inaccurate. Instead, the BBC's request is so broad and vague that it encompasses Mr. Smith's testimony about anything and everything he recalls from the grand jury. Specifically, the BBC asks this Court to authorize Mr. Smith to "disclose during his deposition . . . *any grand jury information* relevant to show that the violence occurred on January 6 was foreseeable to Mr. Trump, that he caused it, and that he and his coconspirators leveraged it to carry out their conspiracies." ECF No. 1-2, Proposed Order at 1 (emphasis added) (quotation omitted). That would allow testimony about *any* grand jury information that meets a nebulous test of relevance. That is no limit at all.

The BBC's request is hardly the narrow and limited request for disclosure of grand jury information that courts have allowed in appropriate cases. *See*, *e.g.*, *Doe v. Cabrera*, 126 F. Supp. 3d 160, 165 (D.D.C. 2015) (approving a "circumscribed" request for a single witness's grand jury testimony). As this Court explained, "such a request for 'any' and 'all' material is unlikely to 'pass muster' in this context." *Smith*, 2025 WL 843279, at *7 (quoting *In re Hack of DNC*, Mem. Op. at 10). "[T]he Supreme Court has explained" that courts must "ensure that grand-jury secrecy is lifted only 'discretely and limitedly.'" *Id.* (quoting *Douglas Oil*, 441 U.S. at 221). "Indeed, that Court has suggested that typically only 'discrete portions' of grand-jury transcripts will merit disclosure." *Id.* (quoting *Douglas Oil*, 441 U.S. at 219-20). Far from seeking only discrete portions of grand-jury transcripts, the BBC seeks authorization to ask Mr. Smith (the lead prosecutor of the investigation) about his recollections of *any* testimony or documentary evidence before the grand jury, so long as Mr. Smith subjectively believes that the information meets a nebulous test of relevance. At best, Mr. Smith is likely to have only imperfect recollections of evidence that the grand jury developed years ago in a matter where the grand jury returned an indictment in August

2023. The BBC cannot point to a single case where a court has broadly lifted the lid on grand jury secrecy, filtered through the lens of a prosecutor's potentially stale recollections. For the Court to do so here would be contrary to well-established law and violate longstanding principles of grand jury secrecy.

## CONCLUSION

The Court should deny the BBC's Motion to Compel the Deposition of Jack Smith and to Authorize Disclosure of Certain Grand Jury Information.

Dated: November 17, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

ALEXANDER HAAS
Director, Federal Programs Branch

JACQUELINE COLEMAN SNEAD
Deputy Director, Affirmative Section
Enforcement and Affirmative Litigation

ELIZABETH J. SHAPIRO
Deputy Director
Civil Division, Federal Programs Branch

JEREMY S.B. NEWMAN
Chief Litigation Counsel
Civil Division, Federal Programs Branch

*/s/ Pardis Gheibi*
PARDIS GHEIBI (D.C. Bar No. 90004767)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

*Attorneys for the Respondent*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2026, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/ECF system.

*/s/ Pardis Gheibi*